UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x
RLI INSURANCE COMPANY

                Plaintiff,                <u>OPINION</u>

    -against-                05 Civ. 947 (MGC)

ST. PATRICK'S HOME FOR THE
INFIRM AND AGED,

                Defendant.
--------------------------------X

APPEARANCES:

    SHEAK & KORZUN, P.C.
    Attorneys for Plaintiff
    1 Washington Crossing Road
    Pennington, New Jersey 08534

    By:  Timothy J. Korzun, Esq.

    WASSERMAN GRUBIN & ROGERS, LLP
    Attorneys for Defendant
    1700 Broadway, 42nd Floor
    New York, New York 10019

    By:  Richard Wasserman, Esq.
         Douglas J. Lutz, Esq.

1

**CEDARBAUM, J.**

Defendant St. Patrick's Home for the Infirm and Aged ("St. Patrick's") moves for partial summary judgment on its counterclaim against plaintiff RLI Insurance Company ("RLI") for liquidated damages under the Interim Funding Agreement ("IFA") executed by RLI and St. Patrick's in 2001. St. Patrick's also moves to dismiss RLI's claim for damages on the ground that the damages owed by RLI to St. Patrick's on St. Patrick's counterclaim are greater than the damages sued for by RLI.

RLI opposes St. Patrick's motion for partial summary judgment, arguing that St. Patrick's breached the terms of the bond by failing to give prompt notice to RLI of AFI's default, thereby forfeiting any claim against RLI under the bond. RLI also argues that the liquidated damages provision in the IFA was nullified by St. Patrick's delay in notifying RLI of the damages claim. RLI moves for summary judgment on St. Patrick's counterclaim for liquidated damages and on RLI's request for a declaration that RLI has no responsibilities to St. Patrick's under a performance bond issued by RLI.

For the reasons that follow, St. Patrick's motion for partial summary judgment on its counterclaim is granted and

its motion to dismiss RLI's claim for damages is denied. RLI's motion for summary judgment is denied.

BACKGROUND

This dispute arises out of a December 1997 contract ("the Contract") between contractor Architectural Facades, Inc. ("AFI") and defendant St. Patrick's. St. Patrick's hired AFI to construct a new façade for the nursing home that St. Patrick's operated. Plaintiff RLI acted as surety and provided bonds to guaranty AFI's performance of the work. On May 7, 1998, RLI issued two bonds to AFI as principal and St. Patrick's as obligee – a performance bond and a labor and material payment bond – each for $5,740,000. The bonds incorporate by reference the terms and conditions of the Contract. The performance bond also includes the provision that:

> Whenever Contractor [AFI] shall be, and declared by Owner [St. Patrick's] to be in default under the Contract, the Owner having performed Owner's obligations thereunder, the Surety may promptly remedy the default, or shall promptly 1) Complete the Contract in accordance with its terms and conditions, or 2) Obtain a bid or bids for completing the Contract in accordance with its terms and conditions . . . .

The Contract provides that "substantial completion" of the project was to be achieved by December 30, 1999 and that time was "of the essence." Contract ¶ 3.2. AFI and St.

3

Patrick's later agreed that the work was not completed by the December 1999 deadline and so, on January 19, 2001, executed Change Order No. 4.  In this Order, the total contract price increased by $153,517 and St. Patrick's was credited for several work items deleted from the original Contract in the amount of $150,000, so that the net contract price increased by $3,517.  Change Order No. 4 ¶ D.  The Change Order also provides that:

> The Owner [St. Patrick's] and the Contractor [RLI] further agree that the damages that the Owner will suffer if Substantial Completion is delayed beyond December 31, 2000, including items such as extended architectural and engineering expenses, interest, and costs of disruption of its operations are difficult to calculate with precision.  Accordingly, it is agreed that for every day beyond December 31, 2000, that Substantial Completion is delayed, the Contractor will pay the Owner liquidated damages of <u>$1,600 per calendar day</u>, which the Owner can offset against any amounts due and owing to the Contractor.

Id. ¶ E (emphasis added).  In addition, St. Patrick's agreed that it would waive liquidated damages if "all Work" were completed by March 21, 2001.  Id.  "All Work" was defined as "specifically including panels, windows, caulking, the Bridge and the column covers."  Id.

In June 2001, when the project was still not completed, St. Patrick's, RLI and AFI executed an Interim Funding Agreement ("IFA"), in which RLI acknowledged that AFI had

4

not yet completed the project.  The IFA notes that St. Patrick's assessed liquidated damages at a rate of $1,600 per day for every day between January 1 and May 31, 2001, totaling $241,600.  The IFA accordingly provides that St. Patrick's can properly deduct the liquidated damages from the money St. Patrick's otherwise owes to AFI.  IFA ¶¶ g, 4. The IFA also provides that St. Patrick's will waive liquidated damages for days after May 31, 2001 if "all Work" other than "punchlist work" is completed by August 17, 2001. Id. ¶ 6.  All "Work" is defined as "including panels, windows, caulking, the Bridge, the column covers and the final cleaning."  Id.  Finally, the IFA requires RLI to make funds available to AFI to allow AFI to complete the project, id. ¶¶ 1.6, 1.6.1, although, according to RLI, AFI never requested any funds from RLI.

    The parties now dispute whether St. Patrick's is entitled to recover any amount of liquidated damages under the IFA.  They also disagree as to whether and when AFI completed "all Work" on the project, as "all Work" is defined in the IFA.  St. Patrick's asserts that AFI did not complete "all Work" until after September 30, 2001, while RLI maintains that the work may have been substantially completed as early as spring 2001.  However, RLI does not proffer any evidence in support of this contention.

5

AFI continued to work on the project until early 2003, promising to install the wall panels after they were shipped to AFI.  In early 2003, when the missing wall panels had still not been installed, St. Patrick's contacted RLI and demanded that RLI finish the project.  On May 14, 2003, AFI was terminated for cause.  The parties dispute whether St. Patrick's met its notice of claim obligations under the Contract.  The parties also dispute whether St. Patrick's performance of its notice obligations was a condition precedent to RLI being liable on the performance bond.

## DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In deciding whether a genuine issue of fact exists, the court must "examine the evidence in the light most favorable to the

party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party." In re Chateaugay Corp., 10 F.3d 944, 957 (2d Cir. 1993). Summary judgment is appropriate if the nonmoving party fails "to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex, 477 U.S. at 323.

I.  St. Patrick's Motion for Partial Summary Judgment

St. Patrick's moves for summary judgment on its claim for $436,800 in liquidated damages under the Contract. This amount represents damages of $1,600 per day for the period from January 1 through September 30, 2001. St. Patrick's proffers an October 10, 2001 letter from St. Patrick's attorneys and an October 11, 2001 memo from the project engineer as evidence that "all Work," as defined in the IFA, was not completed by September 30, 2001. The October 10 letter states that the project engineer met with a representative of AFI to review the final punchlist on October 8. See Korzun Decl., Ex. D. The October 11 memo, from the project engineer to AFI, states that a number of items of work remain to be completed, including work on the panels. See Wasserman Decl., Ex. K. These documents, St. Patrick's argues, show that "all Work" was not completed

7

prior to September 30, 2001 and that St. Patrick's is therefore allowed to recover liquidated damages for the period from January 1 through September 30, 2001 under the IFA.

RLI responds that St. Patrick's is not entitled to summary judgment on this claim for two reasons.  First, RLI contends that "all Work" may have been substantially completed as early as "the spring of 2001" and that St. Patrick's therefore cannot recover any liquidated damages under the IFA.  <u>See</u> RLI Memo at 10 n.2.  RLI, however, explicitly acknowledged in the IFA that the project was not substantially completed as of June 1, 2001.  RLI does not proffer any evidence to support its contrary assertion.  Nor does RLI offer any evidence to contradict the evidence proffered by St. Patrick's that indicates that "all Work" was not completed prior to September 30, 2001.

Second, RLI opposes summary judgment on the ground that it is not required to make any payments under the performance bond because St. Patrick's failed to give timely notice to RLI of AFI's default.  In support of this argument, RLI cites several decisions in which an obligee's duty to give prompt notice to the surety of the principal's default was found to be a condition precedent to the surety's obligation to pay under the bond.  <u>See</u> <u>Elm Haven</u>

8

Const. Ltd. P'ship v. Neri Const. LLC, 376 F.3d 96, 101 (2d Cir. 2004)(finding that obligee that hired a replacement subcontractor five weeks before declaring a default breached its obligation to surety under performance bond to give surety the option to cure the default and that surety was therefore excused from performing under the bond); Seaboard Sur. Co. v. Town of Greenfield, 370 F.3d 215, 219 -220 (1st Cir. 2004)(holding that plaintiff's failure to provide surety with fifteen days' advance notice of principal's default, as required under the bond, was a material breach of the bond); Nat'l Fuel Gas Distrib. Corp. v. Hartford Fire Ins. Co., 28 A.D.3d 1169, 1170-71 (4th Dep't 2006)(concluding that notice requirement in surety bond created a condition precedent to surety's obligation to pay and that obligee's failure to comply with the condition in a timely manner barred it from recovering under the bond).

    However, unlike the bonds at issue in the cases cited by RLI, the performance bond in this case does not include an explicit notice requirement. The bond lists three conditions precedent to RLI being obligated under the bond: (1) that AFI be in default under the Contract, (2) that St. Patrick's declare AFI to be in default, and (3) that St. Patrick's have performed its obligations under the Contract. Otherwise, the bond states that "[t]he Surety hereby waives

notice of any alteration or extension of time made by the Owner."

RLI argues that the third condition precedent was not satisfied because St. Patrick's did not comply with its notice of claim obligations under the Contract. The Contract, to which RLI is not a party, provides that:

> Time Limits on Claims. Claims by either party must be made within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Claims must be made by written notice. An additional Claim made after the initial Claim has been implemented by Change Order will not be considered unless submitted in a timely manner.

Contract, AIA Addendum ¶ 4.3.3. "A Claim" is defined in the Contract as "a demand or assertion by one of the parties...." Id. ¶ 4.3.1.

RLI argues that St. Patrick's breached the notice provision of the Contract by failing to notify RLI that AFI had defaulted. However, the notice provision in the Contract does not require that notice be given to RLI. The Contract provides that:

> Claims, including those alleging an error or omission by the Architect, shall be referred initially to the Architect for action as provided in Paragraph 4.4. A decision by the Architect, as provided in Subparagraph 4.4.4, shall be required as a condition precedent to arbitration or litigation of a Claim between the Contractor and Owner as to all such matters arising prior to the date final payment is due, regardless of (1)

10

>      whether such matters relate to the execution and
>      progress of the Work or (2) the extent to which
>      the work has been completed.

Id. ¶ 4.3.2.  The Architect, under the Contract, will review all Claims and "may also, but is not obligated to, notify the surety, if any, of the nature and amount of the Claim." Id. ¶ 4.4.1 (emphasis added).  This last provision in particular shows that the written notice requirement in Paragraph 4.3.3 does not require written notice to the surety.  If such notice were required under the Contract, then the Contract would not then also include a provision permitting the Architect to notify the surety of the Claim.

   RLI also seeks to avoid paying liquidated damages on the ground that St. Patrick's failed to terminate AFI or otherwise mitigate its damages after AFI failed to complete "all Work" by August 17, 2001.  However, St. Patrick's decision not to terminate AFI after AFI failed to complete "all Work" by August 17, 2001 does not constitute a waiver of the liquidated damages provision in the contract.  See, e.g., Hunts Point Multi-Serv. Ctr., Inc. v. Terra Firma Const. Mgmt. & Gen. Contracting LLC, No. 16598/2002, 2003 WL 22231543, at *6 (N.Y. Sup. Ct. Aug. 22, 2003) ("Preliminarily, it should be noted that the owner's acquiescence in the contractor's completion of the contracts beyond the fixed date cannot constitute a waiver of

11

liquidated damages."). Even if St. Patrick's had an obligation to mitigate its damages by taking some action after August 17, RLI presents no evidence as to how any action by St. Patrick's would have resulted in "all Work" being completed before September 30, thereby eliminating some portion of the liquidated damages that St. Patrick's now seeks to recover for the period from January 1 through September 30.

RLI finally argues that St. Patrick's has shown no factual justification for the agreed upon daily liquidated damages amount of $1,600. However, "[t]he burden is on the party seeking to avoid liquidated damages...to show that the stated liquidated damages are, in fact, a penalty." JMD Holding Corp. v. Congress Fin. Corp., 4 N.Y.3d 373, 380 (2005). RLI has made no such showing.

II. St. Patrick's Motion to Dismiss RLI's Claim for the Contract Balance

St. Patrick's moves for summary judgment dismissing RLI's claim for the alleged outstanding contract balance of $339,381, noting that summary judgment may be granted on a party's counterclaim even if the other party asserts a claim that might offset the damages on the counterclaim. See Electro-Catheter Corp. v. Surgical Specialties Instrument

12

Co., 587 F. Supp. 1446, 1456-57 (D.C.N.J. 1984) (finding that defendant's assertions of its entitlement to an offset did not preclude granting partial summary judgment on plaintiff's contract claims since no material facts remained for adjudication).  However, St. Patrick's does not cite any authority for the proposition that a party's claim for contract damages should be dismissed outright because it could be entirely offset by the damages granted on the other party's liquidated damages claim.

### III. RLI's Motion for Summary Judgment

RLI moves for summary judgment dismissing St. Patrick's counterclaim for liquidated damages and for summary judgment declaring that RLI is not liable under the performance bond. RLI first argues that St. Patrick's cannot recover any damages under the performance bond because St. Patrick's materially breached its obligations under the bond by failing to give "timely" notice to RLI of AFI's default. This argument hinges on RLI's reading of the bond as requiring St. Patrick's to have declared AFI to be in default on or before August 17, 2001 and to have given notice to RLI of such default at that time.

However, as discussed in Part I, supra, the bond does not require St. Patrick's to have declared AFI to be in

13

default when AFI failed to complete "all Work" by August 17, 2001.  The bond provides that:

> Whenever Contractor [AFI] shall be, and declared by Owner [St. Patrick's] to be in default under the Contract, the Owner having performed Owner's obligations thereunder, the Surety may promptly remedy the default, or shall promptly 1) Complete the Contract in accordance with its terms and conditions, or 2) Obtain a bid or bids for completing the Contract in accordance with its terms and conditions ...

Neither the Contract nor the IFA modifying the Contract require St. Patrick's to have declared AFI to be in default when AFI failed to complete all Work by August 17, 2001. Rather, the IFA provides that if "all Work" is not completed by August 17, 2001, then St. Patrick's will be entitled to "continue the liquidated damages provided by Change Order 4 subsequent to May 31, 2001, until completion is achieved." IFA ¶ 6.  The parties clearly contemplated that AFI might not complete all Work by August 17, 2001 and therefore included a provision for damages if this occurred.  They did not include a requirement that St. Patrick's declare AFI to be in default if "all Work" were not completed by that date. There is no evidence to support RLI's contention that St. Patrick's had an obligation under the bond to declare AFI to be in default if AFI failed to complete "all Work" by August 17, 2001.

Although RLI also argues that St. Patrick's cannot recover under the bond because St. Patrick's "impaired the suretyship," RLI does not explain what act by St. Patrick's modified the duties of AFI under the bond.  See RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY § 37(2)("If the obligee fundamentally alters the risks imposed on the secondary obligor by...(b) <u>agreeing to a modification of the duties of the principal obligor</u> that either amounts to a substituted contract or imposes risks on the secondary obligor fundamentally different from those imposed on the secondary obligor prior to modification [] the secondary obligor is discharged from any unperformed portion of the secondary obligation as more fully set forth in those sections."(emphasis added)).

CONCLUSION

For the foregoing reasons, St. Patrick's motion for partial summary judgment on its counterclaim is granted and its motion to dismiss RLI's claim for damages is denied. RLI's motion for summary judgment is denied.

Dated:   New York, New York
         September 27, 2006

                                   S/_____
                                      MIRIAM GOLDMAN CEDARBAUM
                                      United States District Judge